# EXHIBIT A

NO _____
A.M. _____ FILED _____ P.M.

JUL 1 7 2015

CHRISTOPHER D. RICH, Clerk
By SANTIAGO BARRIOS
DEPUTY

Wade L. Woodard (ISB No. 6312)
*wlw@andersenbanducci.com*
Zachary S. Zollinger (ISB No. 9259)
*zsz@andersenbanducci.com*
**ANDERSEN BANDUCCI PLLC**
101 S. Capitol Blvd., Suite 1600
Boise, ID 83702
Telephone:  (208) 342-4411
Facsimile:   (208) 342-4455

*Attorneys for Plaintiff*

MELISSA MOODY

**IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT OF THE**

**STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA**

| | |
|---|---|
| US ECOLOGY IDAHO, INC., a Delaware corporation, | Case No.   **CV OC 1512338** |
| Plaintiff, | **SUMMONS** |
| v. | |
| ENVIRONMENTAL CHEMICAL CORPORATION, a Kentucky corporation | |
| Defendant. | |

NOTICE:  YOU HAVE BEEN SUED BY THE ABOVE-NAMED PLAINTIFFS.  THE
COURT MAY ENTER JUDGMENT AGAINST YOU WITHOUT FURTHER NOTICE
UNLESS YOU RESPOND WITHIN 20 DAYS. READ THE INFORMATION BELOW.


TO:    **ENVIRONMENTAL CHEMICAL CORPORATION**

       **C/O REGISTERED AGENT:**

       **C T CORPORATION SYSTEM**

       **306 W MAIN ST, SUITE 512**

       **FRANKFORT, KY 40601**

SUMMONS - 1

**EXHIBIT A**

You are hereby notified that in order to defend this lawsuit, an appropriate written response must be filed with the above-designated court at 200 W Front St., Boise, ID 83702, telephone number (208) 287-6879, within 20 days after service of this Summons to you. If you fail to so respond the court may enter judgment against you by the Plaintiffs in the Complaint.

A copy of the Complaint is served with this Summons. If you wish to seek the advice or representation by an attorney in this matter, you should do so promptly so that your written response, if any, may be filed in time and other legal rights protected.

An appropriate written response requires compliance with Rule 10(a)(1) and other Idaho Rules of Civil Procedure and shall also include:

1. The title and number of this case.

2. If your response is an Answer to the Complaint, it must contain admissions or denials of the separate allegations of the Complaint and other defenses you may claim.

3. Your signature, mailing address and the telephone number, *or* the signature, mailing address and the telephone number of your attorney.

4. Proof of mailing or delivery of a copy of your response to the Plaintiffs' attorney, as designated above.

To determine whether you must pay a filing fee with your response, contact the Clerk of the above-named court.

JUL 1 7 2015

DATED this _____ day of July 2015.

CLERK OF THE DISTRICT COURT

CHRISTOPHER D. RICH

By: SANTIAGO BARRIOS

Deputy Clerk

SUMMONS - 2

COPY

Wade L. Woodard (ISB No. 6312)
*wlw@andersenbanducci.com*
Zachary S. Zollinger (ISB No. 9259)
*zsz@andersenbanducci.com*
**ANDERSEN BANDUCCI PLLC**
101 S. Capitol Blvd., Suite 1600
Boise, ID 83702
Telephone:  (208) 342-4411
Facsimile:  (208) 342-4455

NO _____ FILED _____
A.M. _____ P.M. _____

**JUL 1 7 2015**

CHRISTOPHER D. RICH, Clerk
By SANTIAGO BARRIOS
DEPUTY

*Attorneys for Plaintiff*

## IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT OF THE

## STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

US ECOLOGY IDAHO, INC., a Delaware
corporation,

                    Plaintiff,

v.

ENVIRONMENTAL CHEMICAL
CORPORATION, a Kentucky corporation

                    Defendant.

Case No.  **CV OC 1512338**

**COMPLAINT AND DEMAND
FOR JURY TRIAL**

Fee:          **$221.00**
Category:   **A(A)**

        Plaintiff, by and through its counsel of record, ANDERSEN BANDUCCI PLLC for its

complaint against Defendant, pleads and alleges as follows:

### THE PARTIES

        1.        Plaintiff US Ecology Idaho, Inc. ("US Ecology Idaho" or "Plaintiff") is a general

business corporation incorporated under the laws of Delaware with its principal places of

business in Boise, Idaho and Grand View, Idaho.

        2.        Defendant Environmental Chemical Corporation ("ECC" or "Defendant") is a

general business corporation incorporated under the laws of the State of Kentucky doing

business in Idaho.

COMPLAINT AND DEMAND FOR JURY TRIAL - 1

## JURISDICTION AND VENUE

3.    This Court has jurisdiction pursuant to Idaho Code § 5-514.  The contract between US Ecology Idaho and ECC giving rise to this action entails performance substantially within the state of Idaho and US Ecology Idaho is an Idaho corporation.  ECC agreed to pay US Ecology Idaho to transport ECC's waste to Idaho and dispose of that waste in Idaho.

4.    Venue is proper in Ada County pursuant to Idaho Code § 5-404.

## GENERAL FACTUAL ALLEGATIONS

5.    The foregoing paragraphs are incorporated herein by reference and restated as if set forth in full.

6.    On or around February 21, 2014, US Ecology Idaho and EEC entered into a Waste Transportation, Disposal and Recycling Agreement ("WTDRA").

7.    On or around July 30, 2014, US Ecology Idaho and EEC entered into the Pricing Addendum to Waste Transportation, Disposal and Recycling Agreements ("Pricing Addendum").

8.    On or around July 30, 2014, US Ecology Idaho and EEC entered into the Technical and Transportation Requirements Addendum to Waste Transportation, Disposal and Recycling Agreement ("Technical and Transportation Addendum").

9.    Together, the WTDRA, Pricing Addendum, and Technical and Transportation Addendum constitute the relevant contract between US Ecology Idaho and ECC (together, "Agreement").  A true and correct copy of the Agreement is attached hereto as **Exhibit A**.

10.   As part of Defendant's business, it generates or manages certain waste material that may require transportation, treatment, storage, disposal and/or recycling services.  Pursuant

to the Agreement, Defendant agreed to pay US Ecology Idaho to perform those services at the price agreed to in the Pricing Addendum.

11.    US Ecology Idaho has fully performed under the terms of the Agreement. Nevertheless, Defendant has failed to pay its invoices when due.

12.    In particular, pursuant to section XI of the WTDRA, Defendant agreed to pay for US Ecology Idaho's services, in cash, upon US Ecology Idaho accepting ECC's waste for treatment, storage, disposal, and/or recycling unless a line of credit was extended to Defendant. Defendant received a line of credit, and thereby agreed pursuant to the Pricing Addendum to make payment on invoices it received from US Ecology Idaho within forty-five (45) days of the invoice date.

13.    Defendant has failed to pay certain invoices it received within forty-five (45) days of the invoice date, with many of said invoices being in excess of ninety (90) days overdue.

14.    Additionally, Defendant agreed in paragraph 5 of the Transportation Terms & Conditions contained within the Technical and Transportation Addendum to bear responsibility for any demurrage and transportation delay costs. US Ecology Idaho has incurred demurrage related expenses under the Agreement, but Defendant has failed to pay for those expenses.

15.    Specifically, Defendant agreed in paragraph 3 of the Additional Rail Terms & Conditions contained within the Technical and Transportation Addendum to pay demurrage costs at the rate of sixty (60) dollars per day per railcar. In addition to demurrage related expenses already accrued and invoiced to ECC, additional demurrage expenses are accruing daily for fifty-four (54) railcars located at US Ecology Idaho's rail transfer facility in Idaho, but Defendant has failed to pay for those expenses.

COMPLAINT AND DEMAND FOR JURY TRIAL - 3

16.     Pursuant to paragraph 8 of the Transportation Terms & Conditions contained within the Technical and Transportation Addendum, Defendant agreed to pay US Ecology Idaho's costs incurred as a result of ECC's failure to perform or adhere to its contractual obligations to US Ecology Idaho.

17.     Pursuant to paragraph XI of the WTDRA and the Pricing Addendum, Defendant agreed that all amounts due and payable for more than forty-five (45) days past their invoice date would bear interest at the rate of one and one-half percent (1 1/2%) per month.

18.     On July 2, 2015, demand for payment was made upon ECC for the amount then-owing.  A true and correct copy of that demand for payment, along with a list of outstanding invoices as of June 30, 2015, is attached hereto as **Exhibit B**.  Nevertheless, Defendant failed to make payment.

19.     As of July 17, 2015 EEC owed US Ecology Idaho $2,230,885.24 for services performed under the Agreement.  This amount continues to increase.

20.     Pursuant to section XIV of the WTDRA, the Agreement is governed and construed in accordance with the laws of the state of Idaho.

**CLAIMS FOR RELIEF**

**Count I**
**(Breach of Contract—The Agreement)**

21.     The foregoing paragraphs are incorporated herein by reference and restated as if set forth in full.

22.     US Ecology Idaho and ECC entered into a binding and enforceable contract herein described as the Agreement.  US Ecology Idaho rendered complete performance pursuant to the terms of the Agreement by, *inter alia*, accepting ECC's waste for treatment, storage, disposal, and/or recycling.

COMPLAINT AND DEMAND FOR JURY TRIAL - 4

23.     ECC, however, breached its obligations under the Agreement.  Among other things, ECC violated the Agreement by failing to pay amounts owed to US Ecology Idaho.

24.     ECC's breach of the Agreement has caused US Ecology Idaho significant damages, including but not limited to $871,509.01 related to the transportation and disposal of ECC's waste and $1,359,376.23 in demurrage related expenses, as well as attorneys' fees and costs.

25.     Therefore, US Ecology Idaho is entitled to recover damages in an amount to be proven at trial, plus interest and costs, including attorneys' fees and costs.

## Count II
### (Action for Price)

26.     The foregoing paragraphs are incorporated herein by reference and restated as if set forth in full.

27.     In the alternative, ECC owes US Ecology Idaho for services sold by US Ecology Idaho to ECC and for costs incurred, and to be incurred, related to the same.  ECC ordered those services and agreed to pay for them.  In response, US Ecology Idaho provided those services from August 2014 to the current date, and may be required to perform additional related services in the future, yet ECC has failed to pay in breach of its enforceable obligation.

28.     Therefore, US Ecology Idaho demands judgment against ECC for an amount to be proven at trial, plus interest and costs, including attorneys' fees and costs.

## Count III
### (Account Stated)

29.     The foregoing paragraphs are incorporated herein by reference and restated as if set forth in full.

COMPLAINT AND DEMAND FOR JURY TRIAL - 5

30.     US Ecology Idaho served upon ECC invoices evidencing the full unpaid balance of the accounts between the parties showing the services provided and the reasonable and agreed-upon value of the goods delivered for said accounts.

31.     ECC received these invoices, failed to object to the billing within a reasonable time, and therefore assented to the invoiced amount.

32.     Pursuant to the account stated, ECC is indebted to US Ecology Idaho in the amount of $2,230,885.24.

33.     Therefore, US Ecology Idaho demands judgment against ECC for an amount to be proven at trial, plus interest and costs, including attorneys' fees and costs.

## Count IV
## (Open Account)

34.     The foregoing paragraphs are incorporated herein by reference and restated as if set forth in full.

35.     In the alternative, US Ecology Idaho is entitled to relief based on a claim for Open Account.

36.     US Ecology Idaho and ECC had a contract for the performance of services for which US Ecology Idaho extended ECC credit and ECC would pay invoices when due.

37.     Under the Agreement, US Ecology Idaho and ECC had running and concurrent dealings that were kept unclosed and with the expectation of further transactions involving the performance of services by US Ecology Idaho for ECC.

38.     Pursuant to the Agreement between US Ecology Idaho and ECC, US Ecology Idaho kept an account of the debits and credits involved in the transactions.

39.     ECC owes US Ecology Idaho the principal amount, plus interest, of $2,230,885.24, as well as interest and demurrage costs which continue to accrue.

COMPLAINT AND DEMAND FOR JURY TRIAL - 6

40.     US Ecology Idaho is entitled to judgment against ECC for an amount to be proven at trial, plus interest and costs, including attorneys' fees and costs.

## Count V
### (Unjust Enrichment)

41.     The foregoing paragraphs are incorporated herein by reference and restated as if set forth in full.

42.     In the alternative, ECC has been unjustly enriched by its wrongful acts enumerated herein.

43.     US Ecology Idaho conferred benefits on ECC by providing it with services.

44.     ECC allowed US Ecology Idaho to perform those services and accepted those services.  ECC appreciated those services without providing remuneration for them.

45.     ECC knew or should have known that US Ecology Idaho expected payment for those services.

46.     Nevertheless, US Ecology Idaho has not been paid in full for the services performed.

47.     US Ecology Idaho has incurred damages as a result of ECC's failure to pay for the services performed.

48.     It would accordingly be inequitable and not in good conscience for ECC to accept the benefit of those goods and services without payment for the value for the benefit.

49.     US Ecology Idaho is entitled to a judgment against ECC for an amount to be proven at trial, plus interest and costs, including attorneys' fees and costs.

COMPLAINT AND DEMAND FOR JURY TRIAL - 7

## Count VI
## (Quantum Meruit)

50.    The foregoing paragraphs are incorporated herein by reference and restated as if set forth in full.

51.    In the alternative, US Ecology Idaho is entitled to quantum meruit damages.

52.    US Ecology Idaho conferred benefits on ECC by providing it with services.

53.    ECC allowed US Ecology Idaho to perform, and accepted these services. ECC appreciated the use of those services without providing remuneration for them.

54.    ECC knew or should have known that US Ecology Idaho expected payment for the services delivered.

55.    US Ecology Idaho has not been paid in full for the services delivered.

56.    US Ecology Idaho has incurred damages as a result of ECC's failure to pay for the goods delivered.

57.    It would accordingly be inequitable and not in good conscience for ECC to accept the benefit of those goods and services without payment of the value for the benefit.

58.    US Ecology Idaho is entitled to a judgment against ECC for an amount to be proven at trial, plus interest and costs, including attorneys' fees and costs.

## Count VII
## (Breach of the Duty of Good Faith and Fair Dealing)

59.    The foregoing paragraphs are incorporated herein by reference and restated as if set forth in full.

60.    In the alternative, US Ecology Idaho is entitled to recover damages caused by ECC's breach of the duty of good faith and fair dealing.

COMPLAINT AND DEMAND FOR JURY TRIAL - 8

61.     Implied in the parties' Agreement was the duty to act fairly and in good faith. Under that duty, ECC was required to not do anything that prevents US Ecology Idaho from receiving the benefits of the contract.

62.     By repeatedly failing to pay invoices for services performed and accepted, ECC prevented US Ecology Idaho from receiving the benefits of the Agreement.

63.     US Ecology Idaho is entitled to a judgment against ECC for an amount to be proven at trial, plus interest and costs, including attorneys' fees and costs.

## ATTORNEYS' FEES

Plaintiff has been required to obtain the assistance of counsel in the prosecution of this matter.  Plaintiff is entitled to recover its reasonable costs and attorneys' fees incurred in the prosecution of this matter pursuant to Rule 54 of the Idaho Rules of Civil Procedure, Idaho Code §§ 12-120 and 12-121, and all other applicable law.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues pursuant to Rule 38(b) of the Idaho Rules of Civil Procedure and applicable law.

## PRAYER

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in its favor and against Defendant as follows:

1.     Entry of judgment against Defendant;

2.     Awarding damages in an amount to be proven at trial;

3.     Awarding Plaintiff its reasonable costs and expenses;

COMPLAINT AND DEMAND FOR JURY TRIAL - 9

4.   Awarding Plaintiff its reasonable attorneys' fees; and

5.   Granting Plaintiff such other and further relief, at law and in equity, as this Court deems just and proper.

DATED this 17th day of July 2015.

ANDERSEN BANDUCCI PLLC

for: Wade L. Woodard
*Attorneys for Plaintiff*

# EXHIBIT A

# WASTE TRANSPORTATION, DISPOSAL AND RECYCLING AGREEMENT

Contract No.: 3443

This Waste Transportation, Disposal and Recycling Agreement ("Agreement") is entered into as of this 21st day of February 2014 , by and between US ECOLOGY IDAHO, INC., having offices at 300 E. Mallard Dr., Suite 300, Boise, Idaho 83706 ("Company"), and ECC, having offices at 110 FIELDCREST AVE, SUITE 31, EDISON, NJ 08837 ("Customer"). Company and Customer are sometimes collectively referred to in this Agreement as "Parties" and individually as "Party".

Customer, in the course of its business, generates or manages certain waste material, hereinafter referred to as "Waste", which may require transportation, treatment, storage, disposal and/or recycling services (collectively the "Services"). Company has facilities and the ability to perform the Services in a lawful manner. In consideration of the premises set forth above and the mutual covenants and agreements hereinafter set forth, the Parties hereto agree as follows:

I. CONTRACTING PROCEDURE - Customer shall submit to Company a completed Work Authorization ("WA") and a Waste Product Questionnaire ("WPQ") describing Waste to be managed and provide a representative sample (if requested by Company). Submission of a WA and a completed WPQ shall constitute Customer's request that Company perform Services in connection with the Waste described therein. Company shall indicate its approval of the WPQ by sending Customer a written Waste Approval Letter, Pricing Addendum and Technical and Transportation Requirements Addendum (if necessary) that set forth pricing and specific terms and conditions for Waste receipt. Nothing herein shall require Company to perform an exhaustive analysis of the Waste in order to identify each and every constituent or contaminant contained in the Waste, nor shall any such sampling, analysis or measurement relieve Customer of its responsibility to ensure conformance of the Waste with the specifications set forth in the subject WPQ. Company offers no guarantee or commitment that it will accept any particular type of Waste upon receipt of a WPQ submitted by Customer.

II. NONCONFORMING WASTE - Company shall have the right to reject and return to Customer any Waste which deviates from the specifications set forth in the WPQ or contained in any representative sample or supporting information (including analyses) or would alter the hazard, risk or costs assumed by Company in conjunction with its performance hereunder or cause Company to be in noncompliance with any permit (such Waste referred to as "Nonconforming Waste"). Company shall have the right to reject Waste which in Company's reasonable sole opinion and judgment is Nonconforming Waste. In the event Company rejects Nonconforming Waste, Customer shall pay Company's reasonable charges for the handling, analysis, transportation, necessary repackaging and time involved in returning such Nonconforming Waste to Customer or other agreed-upon location.

III. TITLE AND LIABILITY - Title to the Waste, together with all responsibility and liability in connection therewith, shall pass to Company upon Company's acceptance of the Waste at Company's facility unless, under the provisions of this Agreement, shipment of the Waste is the responsibility of Company, in which event title, responsibility and liability shall pass upon delivery to and acceptance by Company at the commencement of shipment. Title and liability for Nonconforming Waste shall at all times remain with Customer, notwithstanding the fact that physical possession of Nonconforming Waste may have passed to Company. Company may revoke acceptance of Waste at any time, even following disposal, if Waste is determined to be Nonconforming Waste. If title to Waste is revoked at any time by Company, Customer shall pay Company's reasonable charges for the handling, analysis, transportation, necessary repackaging and time involved in returning such Waste to Customer or other agreed-upon location.

IV. LOADING AND TRANSPORTATION - Shipment of the Waste shall be the responsibility of Customer under provisions specified in a Technical and Transportation Requirements Addendum unless Customer arranges with Company for Company to provide transportation. Customer shall be responsible for proper and legal loading of the Waste on vehicles provided or arranged for by Company. The Parties agree and understand that reasonable, justified refusal by drivers or other employees of Company or its subcontractors to load, transport, handle, dispose of and/or recycle Nonconforming Waste will not be considered a breach of this Agreement.

V. CUSTOMER WARRANTIES - CUSTOMER WARRANTS AND REPRESENTS TO COMPANY:

A. The data and information set forth and/or referenced herein, including the WPQ(s), are correct and in accordance with all applicable waste regulations.

B. The Waste to be delivered to Company will conform to the description provided in the WPQ(s) and any representative samples or supporting information (including analyses).

C. Customer warrants that it has advised Company of all known potential health and/or environmental problems associated with the Waste.

VI. INDEMNIFICATION

A. COMPANY INDEMNIFICATION - Company shall indemnify and hold harmless Customer, its officers, directors, employees and agents from such civil penalties, claims and causes of action (including court costs and reasonable attorney fees) as may be brought on account of death or bodily injury to any person; destruction of, or loss of natural resources; or any violation of any federal or state law, regulation or municipal ordinance and which result from or arise out of Company's negligence, willful misconduct, breach of warranty or failure to perform Services in accordance with this Agreement. Company's duty to indemnify is inapplicable to the extent that such penalties, claims or causes of action result from Customer's delivery to Company of Nonconforming Waste.

B. CUSTOMER INDEMNIFICATION - Customer shall indemnify and hold harmless Company, its officers, directors, employees and agents from such civil penalties, claims and causes of action (including court costs and reasonable attorney fees) as may be brought on account of death or bodily injury to any person; destruction or damage to any property; injury to, destruction of, or loss of natural resources; or any violation of any federal or state law, regulation or municipal ordinance, and which result from or arise out of Customer's negligence, willful misconduct, breach of warranty, delivery to Company of Nonconforming Waste or failure of Customer to perform its responsibilities under this Agreement.

C. CONSEQUENTIAL DAMAGES - Notwithstanding the foregoing, neither Party will be liable for, and each Party waives and releases any claims against the other Party for any consequential damages, including lost revenues, lost profits or loss of prospective economic advantage resulting from performance or failure to perform under this Agreement, whether or not the Party was advised of the possibility of such damages.

VII. INDEPENDENT CONTRACTOR - Except as expressly set forth herein, neither Company nor anyone it employs shall ever be considered Customer's employee, agent, servant or representative in performing the Services under this Agreement. Company shall be an independent contractor in the performance of the Services under this Agreement. Company shall exercise, at all times, exclusive control of the operation and activities of all employees, agents and subcontractors of Company. Neither Company nor Customer shall have any authority to employ any person as an employee, agent or subcontractor for or on behalf of the other.

VIII. CONFIDENTIALITY - Company and Customer shall treat as confidential and not disclose to others during or subsequent to the term of this Agreement, except as is necessary to perform this Agreement, any information regarding the other Party's plans, programs, plants, processes, products, costs, equipment, operations or customers which may come within its knowledge in the performance of this Agreement. This clause does not prevent disclosure required by law. The foregoing obligations shall survive the termination of this Agreement.

IX. FORCE MAJEURE - The Parties agree that any delay or failure of either Party to perform its obligations under this Agreement, except for the payment of money for services already rendered, shall be excused if and to the extent caused by acts of God, strikes, action of regulatory agencies, fire, flood, windstorm, explosion, riot, war, sabotage or other cause or causes beyond the reasonable control of the Party affected. Company shall also be excused from performance of this Agreement if Company loses or has suspended any license, permit or other authorization necessary for fulfilling its obligations. Both Parties shall provide prompt notice of such delay and work diligently to remove such cause or causes.

X. SAVINGS CLAUSE - If any part of this Agreement becomes invalid for any reason, the validity of the Agreement as a whole or of any other part will not be affected.

XI. PAYMENT - Company will submit the original of each invoice to the following Customer address:

ECC

110 FIELDCREST AVE, SUITE 31

EDISON, NJ  08837

Payments shall be made in cash at the time Waste is accepted for treatment, storage, disposal and/or recycling by Company unless credit has been approved by Company, in which event payment shall be made within thirty (30) days of invoice date at the following address: P.O. Box 28273, Salt Lake City, UT 84128-0273. All amounts due and payable for more than thirty (30) days after invoice date shall bear interest at the rate of one and one-half percent (1 1/2%) per month. Customer will notify Company of any disputed amounts within thirty (30) days of receiving the invoice. The portion of any invoice that is not disputed within such period shall be deemed accepted by Customer. During the ten (10) business days following notification of a disputed amount, the Parties will attempt to resolve any disputed portions of such invoice and, if resolved, an adjusted payment will be submitted to Company for the agreed-upon amount.

Please mark box if a purchase order number is required on the invoice for payment.

XII. ASSIGNMENT - Customer may not, without prior written approval of Company, assign any part of Customer's rights or obligations under this Agreement. Company may assign its rights, together with its obligations hereunder, to any parent, subsidiary or successor, or in connection with any sale, transfer or other disposition of all, or substantially all, of its business and assets, provided, however, that any such assignee assumes Company's obligations hereunder. Company may sub-contract parts of its obligations to qualified parties.

XIII. ENTIRE AGREEMENT - This Agreement, including the Work Authorization, Pricing Addendum, and WPQ approved by the Parties, contains the entire agreement between the Parties with regard to the matters dealt with in this Agreement. No modifications or amendments shall be of any force or effect unless they are in writing and signed by the Parties to be bound. This Agreement supersedes and takes precedence over any prior agreement between the Parties.

XIV. GOVERNING LAW - This Agreement shall be governed by and construed in accordance with the internal laws of the State of Idaho, without giving effect to applicable principles of conflicts of law to the extent that the application of the laws of another jurisdiction would be required thereby.

XV. NOTICE - Any notice, communication or statement required or permitted to be given hereunder shall be in writing and shall be deemed to have been sufficiently given when delivered either in person or by registered or certified mail, postage prepaid, return receipt requested, to the appropriate address listed in the signature section of this Agreement.

XVI. TERM OF AGREEMENT - The term of this Agreement shall be for a period of three years from the date written above and shall automatically renew for successive periods of one year each. Notwithstanding, either Party may terminate the Agreement upon thirty (30) days prior written notice to the other Party. Prices stated in the Pricing Addendum or otherwise agreed to by the Parties may be changed by Company by giving Customer notice in writing of such change at least seven days before the effective date thereof. If any change in price is refused by Customer, Company may terminate this Agreement upon written notice to Customer.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their duly authorized representatives.

COMPANY

By: _Terri Geis_

Name: Terry Geis  _Terry Geis (Oct 21, 2014)_

Title: General Manager

Date: Oct 21, 2014

CUSTOMER

By: _Glenn Sweatt_

Name _Glenn Sweatt_

Title: VP of Contracts & Compliance

Date: 10/22/14

US ECOLOGY, INC. AND ITS SUBSIDIARIES ARE AFFIRMATIVE ACTION AND EQUAL OPPORTUNITY EMPLOYERS M/F/D/V.

# ⟵★ USEcologyIdaho

### PRICING ADDENDUM TO WASTE TRANSPORTATION, DISPOSAL AND RECYCLING AGREEMENT

| ☒ US Ecology Idaho, Inc. | ☐ US Ecology Nevada, Inc. | ☐ US Ecology Texas, Inc. |
|---|---|---|
| P.O. Box 400 | P.O. Box 578 | P.O. Box 307 |
| 20400 Lemley Road | Highway 95, 11 miles South of | 3.5 Miles S on Petronila Road |
| Grand View, ID 83624 | Beatty | Robstown, TX 78380 |
| (800) 274-1516, (208) 834-2275 | Beatty, NV 89003 | (800) 242-3209, (361) 387-3518 |
| Fax: (208) 834-2919 | (800) 239-3943, (775) 553-2203 | Fax: (361) 387-0794 |
| EPA ID#: IDD073114654 | Fax: (775) 553-2125 | EPA ID#: TXD069452340 |
| Return form to Customer Service Dept. | EPA ID#: NVT330010000 | Return form to Customer Service Dept. |
| | Return form to Customer Service Dept. | |

DATE:  5/19/14          ADDENDUM NO.: 4          CUSTOMER:  ECC

CONTRACT NUMBER: 3443                          ADDRESS:  110 Fieldcrest Ave, Suite 31

CONTRACT DATE:11/29/06                                    Edison, NJ 08837

WPO REFERENCE: 33398

WASTE DESCRIPTION: radioactive impacted soil          CONTACT:  Barbara Growney

EPA HW CODES:  none          PHONE:     908-595-1777     FAX: 908-595-1776


GENERATOR:  USACE – (DuPont NJ)          INVOICE ADDRESS (if different from customer):

ADDRESS:     State Highway 130 (Shell Road)          Same

                     Deepwater, NJ 08023


GENERATOR USEPA I.D. NO.:          CONTACT:

ESTIMATED WASTE QUANTITY: 23,000 Cubic Yards          PHONE:          FAX:


PRICING:
- Direct landfill- $55.00 per ton *
- Transportation (per gondola)- $100.73 per ton **
- Charge for not meeting 106 ton minimum per gondola- $100.73 per ton (2000 lbs)
- Rear Dray- $10.00 per ton (2000 lbs)

The signed Waste Product Questionnaire (WPQ), received in June, is now approved. Once this pricing addendum is signed and returned the approval letter will be sent to ECC and you may order rail transportation as needed.

Rev. (06/09)

**TERMS OF AGREEMENT (IF ANY):**

*PRICING ABOVE INCLUDES DISPOSAL AT US Ecology, Idaho AND APPLICABLE STATE OF Idaho DISPOSAL
FEES/TAXES. PAYMENT SHALL BE MADE IN CASH AT THE TIME WASTE IS ACCEPTED FOR DISPOSAL
UNLESS CREDIT HAS BEEN APPROVED.

1. Above pricing for transportation and disposal is based on US Ecology ID receiving all of the radioactive
   impacted material from this project site unless the following occurs:
   1. If post aggregation blended soil still does not meet US Ecology WAC, as determined by US Ecology
   2. Unless otherwise directed by the client- USACE Philadelphia/Baltimore District
      (It is understood from the start of the proposal to the award to ECC that US Ecology has been part of the
      ECC team exclusively. ECC agrees US Ecology will be the only provider of transportation services to ship
      waste from this project if USACE directs waste to an alternate facility.)

2. The material being shipped to ID, meeting our WAC, which allows for aggregation of hot spots over the
   conveyance, will be transported from the Deepwater, NJ DuPont Project site via 110 ton capacity rail cars to
   the US Ecology Rail Transfer Facility (RTF) on Simco Road, ID.

3. Once material is removed from the gondola car, at our indoor offloading facility and trucked to our
   TSCA/RCRA Subtitle C landfill, USEI, The gondola cars will be cleaned and released per the standard
   USACE "proven" protocol. Pricing is based on the density being > one (1) ton/cubic yard, (>2000 lbs/CY). If
   waste is less than 2000 lbs/CY then the billing for disposal will be done by the CY. USEI will provide the
   gondola car liners. Liners must be approved by USACE. RR fuel surcharges (FS) will be passed
   on at cost to ECC.

4. Installation, loading and proper securing of the gondola car liners will be the responsibility of ECC

5. ECC has agreed to use scales/ bucket scales and is responsible for any overweight gondola cars.

6. ECC will pay for any mobilization/demobilization charges incurred as a result of ECC ordering but not using
   gondolas.

7. Should ECC opt to take advantage of US Ecology's on site WAC confirmation services at the DuPont site
   this can be added to the addendum as it has been quoted to ECC for various options of field support services
   discussed to date.

8. Payment Terms: Net 45 days from date of approved invoice

THIS ADDENDUM AND THE ATTACHED TECHNICAL AND TRANSPORTATION REQUIREMENTS ADDENDUM ARE
INCORPORATED INTO AND ARE A PART OF THE WASTE TRANSPORTATION, DISPOSAL AND RECYCLING
AGREEMENT BETWEEN CUSTOMER AND COMPANY AND ARE NOT BINDING UNLESS AND UNTIL SIGNED
BELOW BY AN AUTHORIZED REPRESENTATIVE OF COMPANY. PRICES IN THIS ADDENDUM ARE SUBJECT TO
ARTICLE XVIII OF THE AGREEMENT AND ARE VALID ONLY AT FACILITY INDICATED BELOW.

Boise-147135.2 0040337-00001                                                              2

## TECHNICAL AND TRANSPORTATION REQUIREMENTS ADDENDUM
## TO WASTE TRANSPORTATION, DISPOSAL AND RECYCLING AGREEMENT

WSID# 33398                                        Contract No.: 3443

### TECHNICAL REQUIREMENTS

1. Customer must order gondola cars in writing 30 days in advance. Please contact the US Ecology Transportation Dir Chuck Overman at coverman@usecology.com for all transportation equipment orders.
2. The Waste Stream Identification Number (WSID) must appear on each manifest paper required by EPA or DOT.
3. Customer is responsible for proper liner installation, loading of the material and securing of the liner, with placards as appropriate for the material.
4. Company does not provide decontamination of trucks or other containers and will not provide certification for decontamination unless requested (additional charges will apply).
5. Waste identified as having non-regulated light ballasts and capacitors are subject to the following: Company must give prior approval and each individual item must have manufacturer markings identifying the item as being non-PCB. Company may consider all PCB light ballasts and small capacitors to be TSCA regulated.
6. Containerized waste is acceptable but not expected so no pricing is included at this time for containerized waste. If encountered for this project it must be shipped in DOT approved containers and is subject to the following requirements: Drums must weigh less than 800 lbs.; Bags must be load rated, double stitched, equipped with integral lift straps and weigh less than 5,600 lbs.; Palletized Boxes exceeding thirty-six (36) inches in any dimension will be subject to surcharge and must weigh less than 2,800 lbs. Non-metal drums may require additional charges. Friable Asbestos must be double bagged, wetted and labeled per the requirements of 40 CFR Part 61, Subpart M. All NESHAPS information must be recorded on the manifest. Floor dry may be added to avoid the formation of free liquids. Debris requiring treatment must meet the definition in 40 CFR §268.2, must not be individually packaged and must be self-unloading if bulk shipped.

### TRANSPORTATION TERMS & CONDITIONS

1. All transportation taxes and fees are the responsibility of the Customer and will be billed as a separate item, if not already included in the quoted rate.
2. Any fuel surcharges added by transporter(s) are the responsibility of the Customer and will be included on Company invoices.
3. Customer is responsible for proper loading, lining, tarping and weighing of vehicles or rail cars. Any overloads or subsequent costs from overloads are the responsibility of the Customer.
4. Customer is responsible for proper manifesting, marking, labeling, and placarding as required by law.
5. Customer is responsible for payment of demurrage and transportation delay costs other than those caused by the transporter or Company, its agents, servants or employees.
6. Customer is responsible for proper and safe handling of all rail containers, gondolas or other transportation equipment while on the Customer's site.
7. Customer is responsible for payments of costs for damage to equipment caused by Customer and/or its contractors, agents or employees. Customer must notify Company of any damage to equipment caused by Company prior to leaving Company's facilities. Claims made after departure cannot be verified or paid.
8. All costs incurred by Company as a result of the failure of Customer to perform or adhere to the foregoing responsibilities and requirements will be due and payable by Customer to Company.
9. Customer is responsible for payment at the rates specified herein for any equipment provided by Company pursuant to this Addendum, but not used.

### ADDITIONAL RAIL TERMS & CONDITIONS

1. Gondolas with a legal gross capacity of 286,000 lbs will be subject to a minimum payload of 105 tons.
2. If gondola cars are ordered and not used, they may be billed as if they were full with 105 tons each. If gondola cars are ordered and not shipped within thirty (30) days, the gondola cars will need to be released and reordered if needed for other projects.
3. Five free days will be allowed for gondolas once the equipment is spotted at the project site or Customer has been notified that empty equipment can be delivered to the project site. Demurrage is $60 per day per railcar and will be assessed in the event gondola loading has not started within five days of the date for which cars were ordered and placed. This fee will continue on a daily basis until gondolas are loaded and released for shipment.
4. Fuel adjustment surcharges will be billed based on the servicing railroad's index (i.e. per gallon of diesel fuel or per barrel of West Texas Intermediate Crude Oil) and charged directly to Customer.
5. Request for rail equipment must be made in writing by Customer prior to the shipment for placement of empty gondolas thirty (30) days in advance.

CUSTOMER: _____     glenn
Signature: _____     2014.07.24 10:59:37
Printed Name and Title:          –06'00'
Date:

FACILITY: _____
Signature: Terry Gaia (Jul 30, 2014)
Printed Name and Title: General Manager
Date:
                                 Jul 30, 2014

Rev.  (06/09)



# ECC PA

EchoSign Document History            July 30, 2014

| | |
|---|---|
| Created: | July 30, 2014 |
| By: | Tino Cereceres (tcereceres@usecology.com) |
| Status: | SIGNED |
| Transaction ID: | XCCCP69334M4EXJ |

## "ECC PA" History

Document created by Tino Cereceres (tcereceres@usecology.com)
July 30, 2014 - 2:40 PM MDT - IP address: 216.64.136.18

Document emailed to Terry Geis (tgeis@usecology.com) for signature
July 30, 2014 - 2:41 PM MDT

Document viewed by Terry Geis (tgeis@usecology.com)
July 30, 2014 - 4:45 PM MDT - IP address: 64.134.238.43

Document e-signed by Terry Geis (tgeis@usecology.com)
Signature Date: July 30, 2014 - 4:47 PM MDT - Time Source: server - IP address: 64.134.238.43

Signed document emailed to Terry Geis (tgeis@usecology.com) and Tino Cereceres
(tcereceres@usecology.com)
July 30, 2014 - 4:47 PM MDT

Adobe EchoSign

# EXHIBIT B



251 E Front St., Suite 400, Boise, ID 83702
P  800.590.5220  F  208.331.7900

July 2, 2015

VIA EMAIL:  BGrowney@ecc.net

ECC
Attention: Barbara Growney
Contract Administrator
110 Fieldcrest Ave.
Suite 31, 2nd Fl.
Edison, NJ 08837

RE:  Outstanding Invoices - Dupont

Dear Ms. Growney,

This letter is in response to your correspondence sent on June 26, 2015 and June 30, 2015.  In
those letters you indicate the outstanding matters related to the Dupont and Harshaw projects
should be kept separate as they are separate projects subject to different contractual
agreements.  Accordingly, this letter will specifically address the matters related to the Dupont
project. A separate letter will following regarding the Harshaw project.

As you are aware, our business relations on the Dupont remedial cleanup site are governed by
the *Waste Transportation, Disposal and Recycling Agreement* dated February 21, 2014 between
US Ecology Idaho, Inc. ("USEI") and ECC; (the "Agreement").  As of June 30, 2015, ECC owed USEI
$2,066,414 for services performed under the Agreement, of which $1,203,708 is related to
demurrage, demobilization, and management of a railcar returned not empty.  These amounts
do not include unbilled services related to the transportation and disposal of waste in fifty-five
(55) rail cars located at our rail transfer facility in Idaho near Simco Rd.

<u>Transportation and Disposal</u> - You noted in your letter dated June 26, 2015 that "ECC is diligently
working with our accounting department to get the invoices we have received, and then pay
USEI."  In Section XI of the Agreement it provides that "payment shall be made within thirty (30)
days of invoice date . . ."  Each transportation and disposal invoice is past due with many invoices
exceeding ninety (90) days past the contractual terms.  *See the attached for a detailed list of
outstanding invoices related to Transportation and Disposal.* ECC's failure to pay these invoices
in a timely manner constitutes a breach of the Agreement.

<u>Demurrage</u> - You stated in your letter dated June 26, 2015 that "ECC has requested from USEI
actual costs so we can have further discussions with USACE regarding the invoices." Under the
terms of the Agreement, ECC is not entitled to review USEI's costs, nor are they relevant to ECC's

Unequaled service. Solutions you can trust.
USecology.com

obligation to pay.   Furthermore, USACE's approval is not a valid condition to payment.   In Paragraph 5 of the "Transportation Terms & Conditions" In the *Technical and Transportation Requirements Addendum to Waste Transportation, Disposal and Recycling Agreement* it states that "Customer [ECC] is responsible for payment of demurrage and transportation delay costs . . ." In Paragraph 3 of the "Additional Rail Terms & Conditions" It states that "[d]emurrage is $60 per day per rallcar . . ."  *See the attached for a detailed list of outstanding invoices related to Demurrage.*  ECC's failure to pay these invoices in a timely manner constitutes a breach of the Agreement.

There is no legal or contractual basis for ECC's failure to pay the amount due. Therefore, if payment in the amount of $2,066,414.54 is not received by the close of business on July 10, 2015, USEI will instruct counsel (copied below) to pursue a recovery action and seek interest on the balance, to which USEI is entitled pursuant to Section XI of the Agreement, as well as additional demurrage charges for cars at USEI's rail transfer facility.  Furthermore, if payment is not received as outlined herein, USEI will evaluate its options to move the cars to a third-party storage facility or return them to the generator.

Thank you for your immediate attention to this matter.

Respectfully,

Wayne R. Ipsen
*Vice President, Corporate Counsel,*
*Compliance Officer & Secretary*

Cc:   Jeff Feeler, US Ecology, Inc., President and CEO
      Eric Gerratt, US Ecology, Inc.
      Kevin Trader, US Ecology, Inc.
      Tim Curtin, US Ecology, Inc.
      Wade Woodard, Andersen Banducci
      Manjiv S. Vohra, ECC, President and CEO
      Eric Banks, ECC
      August Ochabauer, ECC
      Gurmeet Chadha, ECC
      Rick Woodworth, ECC
      Marc Mizrahi, ECC
      Rinku Shah, ECC

ECC OUTSTANDING INVOICES AS OF 6-30-15
DUPONT

| Invoice # | Invoice Date | Invoice Amount | 1 To 30 | 31 To 60 | 61 To 90 | 91 To 150 | Over 150 | Total Outstanding | Generator |
|---|---|---|---|---|---|---|---|---|---|
| GC41507 | 12/8/2014 | 97,620.00 | - | - | - | - | 97,620.00 | 97,620.00 | Demurrage |
| GC41508 | 12/8/2014 | 166,860.00 | - | - | - | - | 166,860.00 | 166,860.00 | Demurrage |
| GC42256 | 1/22/2015 | 154,560.00 | - | - | - | - | 154,560.00 | 154,560.00 | Demurrage |
| GC42694 | 2/13/2015 | 139,020.00 | - | - | - | 139,020.00 | - | 139,020.00 | Demurrage |
| GC43569 | 4/3/2015 | 139,380.00 | - | - | 139,380.00 | - | - | 139,380.00 | Demurrage |
| GC43570 | 4/6/2015 | 161,940.00 | - | - | 161,940.00 | - | - | 161,940.00 | Demurrage |
| GC43883 | 5/4/2015 | 151,440.00 | - | 151,440.00 | - | - | - | 151,440.00 | Demurrage |
| GC44873 | 6/15/2015 | 63,960.00 | 63,960.00 | - | - | - | - | 63,960.00 | Demurrage |
| GC44928 | 6/17/2015 | 117,451.18 | 117,451.18 | - | - | - | - | 117,451.18 | Demobilization |
| GC44929 | 6/17/2015 | 35,725.00 | 35,725.00 | - | - | - | - | 35,725.00 | Trans on FLOX |
| GC45279 | 6/30/2015 | (11,887.97) | (11,887.97) | - | - | - | - | (11,887.97) | Trans on FLOX |
| GC45280 | 6/30/2015 | (12,360.00) | (12,360.00) | - | - | - | - | (12,360.00) | Demurrage |
| G42390 | 1/30/2015 | 17,189.08 | - | - | - | - | 586.25 | 586.25 | Dupont |
| G43118 | 2/27/2015 | 21,952.59 | - | - | - | 3,703.84 | - | 3,703.84 | Dupont |
| G43521 | 3/31/2015 | 17,731.45 | - | - | - | 17,731.45 | - | 17,731.45 | Dupont |
| G43522 | 3/31/2015 | 17,759.62 | - | - | - | 17,759.62 | - | 17,759.62 | Dupont |
| G43523 | 3/31/2015 | 17,496.11 | - | - | - | 17,496.11 | - | 17,496.11 | Dupont |
| G43524 | 3/31/2015 | 17,791.12 | - | - | - | 17,791.12 | - | 17,791.12 | Dupont |
| G43526 | 3/31/2015 | 17,671.79 | - | - | - | 17,671.79 | - | 17,671.79 | Dupont |
| G43527 | 3/31/2015 | 18,137.50 | - | - | - | 18,137.50 | - | 18,137.50 | Dupont |
| G43528 | 3/31/2015 | 18,372.84 | - | - | - | 12,757.07 | - | 12,757.07 | Dupont |
| G43529 | 3/31/2015 | 17,837.52 | - | - | - | 17,837.52 | - | 17,837.52 | Dupont |
| G44039 | 5/11/2015 | 18,091.08 | - | 18,091.08 | - | - | - | 18,091.08 | Dupont |
| G44040 | 5/11/2015 | 18,391.06 | - | 18,391.06 | - | - | - | 18,391.06 | Dupont |
| G44041 | 5/11/2015 | 17,572.36 | - | 17,572.36 | - | - | - | 17,572.36 | Dupont |
| G44042 | 5/11/2015 | 17,693.33 | - | 17,693.33 | - | - | - | 17,693.33 | Dupont |
| G44043 | 5/11/2015 | 18,122.58 | - | 18,122.58 | - | - | - | 18,122.58 | Dupont |
| G44044 | 5/11/2015 | 18,127.54 | - | 18,127.54 | - | - | - | 18,127.54 | Dupont |
| G44045 | 5/11/2015 | 17,503.03 | - | 17,503.03 | - | - | - | 17,503.03 | Dupont |
| G44046 | 5/11/2015 | 17,772.88 | - | 17,772.88 | - | - | - | 17,772.88 | Dupont |
| G44048 | 5/11/2015 | 18,228.64 | - | 18,228.64 | - | - | - | 18,228.64 | Dupont |
| G44093 | 5/15/2015 | 18,253.51 | - | 18,253.51 | - | - | - | 18,253.51 | Dupont |
| G44094 | 5/15/2015 | 18,265.10 | - | 18,265.10 | - | - | - | 18,265.10 | Dupont |
| G44095 | 5/15/2015 | 18,442.43 | - | 18,442.43 | - | - | - | 18,442.43 | Dupont |
| G44096 | 5/15/2015 | 18,212.07 | - | 18,212.07 | - | - | - | 18,212.07 | Dupont |
| G44097 | 5/15/2015 | 18,376.14 | - | 18,376.14 | - | - | - | 18,376.14 | Dupont |
| G44098 | 5/15/2015 | 18,230.29 | - | 18,230.29 | - | - | - | 18,230.29 | Dupont |
| G44099 | 5/15/2015 | 18,014.85 | - | 18,014.85 | - | - | - | 18,014.85 | Dupont |
| G44100 | 5/15/2015 | 18,306.52 | - | 18,306.52 | - | - | - | 18,306.52 | Dupont |
| G44101 | 5/15/2015 | 18,223.67 | - | 18,223.67 | - | - | - | 18,223.67 | Dupont |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| G44102 | 5/15/2015 | 17,892.21 | - | 17,892.21 | - | - | - | 17,892.21 Dupont |
| G44103 | 5/15/2015 | 18,298.26 | - | 18,298.26 | - | - | - | 18,298.26 Dupont |
| G44544 | 5/29/2015 | 18,072.86 | - | 18,072.86 | - | - | - | 18,072.86 Dupont |
| G44545 | 5/29/2015 | 18,057.94 | - | 18,057.94 | - | - | - | 18,057.94 Dupont |
| G44546 | 5/29/2015 | 18,507.07 | - | 18,507.07 | - | - | - | 18,507.07 Dupont |
| G44547 | 5/29/2015 | 17,883.92 | - | 17,883.92 | - | - | - | 17,883.92 Dupont |
| G44548 | 5/29/2015 | 17,593.90 | - | 17,593.90 | - | - | - | 17,593.90 Dupont |
| G44549 | 5/29/2015 | 18,180.58 | - | 18,180.58 | - | - | - | 18,180.58 Dupont |
| G44550 | 5/29/2015 | 18,129.21 | - | 18,129.21 | - | - | - | 18,129.21 Dupont |
| G44551 | 5/29/2015 | 18,069.55 | - | 18,069.55 | - | - | - | 18,069.55 Dupont |
| G44552 | 5/29/2015 | 18,034.74 | - | 18,034.74 | - | - | - | 18,034.74 Dupont |
| G44553 | 5/29/2015 | 18,102.70 | - | 18,102.70 | - | - | - | 18,102.70 Dupont |
| G44554 | 5/29/2015 | 18,354.60 | - | 18,354.60 | - | - | - | 18,354.60 Dupont |
| G44555 | 5/29/2015 | 18,056.28 | - | 18,056.28 | - | - | - | 18,056.28 Dupont |
| G44556 | 5/29/2015 | 18,147.44 | - | 18,147.44 | - | - | - | 18,147.44 Dupont |
| G44557 | 5/29/2015 | 18,072.86 | - | 18,072.86 | - | - | - | 18,072.86 Dupont |
| G44558 | 5/29/2015 | 18,137.50 | - | 18,137.50 | - | - | - | 18,137.50 Dupont |
| G44559 | 5/29/2015 | 18,119.26 | - | 18,119.26 | - | - | - | 18,119.26 Dupont |
| G44560 | 5/29/2015 | 18,347.97 | - | 18,347.97 | - | - | - | 18,347.97 Dupont |
| G44561 | 5/29/2015 | 18,410.94 | - | 18,410.94 | - | - | - | 18,410.94 Dupont |
| G44562 | 5/29/2015 | 17,867.36 | - | 17,867.36 | - | - | - | 17,867.36 Dupont |
| G44753 | 6/11/2015 | 15,069.83 | 15,069.83 | - | - | - | - | 15,069.83 Dupont |
| | | 2,106,881.89 | 207,958.04 | 857,604.23 | 301,320.00 | 279,906.02 | 419,626.25 | 2,066,414.54 |

 **CT Corporation**

**Service of Process Transmittal**
07/27/2015
CT Log Number 527539693

TO: Glenn Sweatt
Environmental Chemical Corporation
1240 Bayshore Hwy
Burlingame, CA 94010-1805

RE: **Process Served in Kentucky**

FOR: Environmental Chemical Corporation  (Domestic State: KY)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | US Ecology, Inc., etc., Pltf. vs. Environmental Chemical Corporation, etc., Dft. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint and Demand, Exhibit(s) |
| **COURT/AGENCY:** | Ada County - Fourth Judicial District Court, ID<br>Case # CVOC1512338 |
| **NATURE OF ACTION:** | Defendant violated the agreement by failing to pay amounts owed to plaintiff |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Frankfort, KY |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 07/27/2015 at 13:52 |
| **JURISDICTION SERVED :** | Kentucky |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days after service |
| **ATTORNEY(S) / SENDER(S):** | Wade L. Woodard<br>Anderson Banducci PLLC<br>101 S. Capitol Blvd.<br>Suite 1600<br>Boise, ID 83702<br>208-342-4411 |
| **REMARKS:** | The documents received have been modified to reflect the name of the entity being served. |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  Fed Ex 2 Day , 781054706629<br><br>Email Notification,  Kevin Kelly  Kkelly@ecc.net |
| **SIGNED:** | C T Corporation System |
| **ADDRESS:** | 306 W. Main Street<br>Suite 512<br>Frankfort, KY 40601 |
| **TELEPHONE:** | 717-234-6004 |

Page 1 of  1 / VP

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.